

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| VOLTAGE PICTURES, LLC, | CIV. 10-MC-_100_ |
| Plaintiff, | |
| vs. | **BRIEF IN SUPPORT OF MOTION TO QUASH AND OBJECTIONS TO SUBPOENA** |
| DOES 1-5,000, | |
| Defendants. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

COMES NOW Midcontinent Communications, a non-party to the above-entitled matter, which has been served with a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, and respectfully submits this Brief in Support of its Motion to Quash and Objections to that Subpoena.

**Factual Background**

Midcontinent Communications is a telecommunications company located in Sioux Falls, South Dakota. *See* Johnson Aff. at ¶ 2. Midcontinent provides internet access to customers, *i.e.*, it is an internet service provider (ISP). *Id.*

Midcontinent had previously filed objections and moved the Court to quash a subpoena faxed to it by the same entity which has now served the subpoena currently in question upon it. *See* September 22, 2010 Order in Civ. No. 10-mc-75. Midcontinent's prior objections and motion were based primarily upon the lack of proper service, lack of jurisdiction, and lack of notice to the parties whose identities are sought under the subpoena. *Id.* The Court granted

Midcontinent's motion to quash for insufficient service of process and did not address other issues raised by Midcontinent's objections and motion. *Id.*

Plaintiff has now served Midcontinent with a nearly-duplicate subpoena, now issued by this Court, by hand-delivery on September 29, 2010, accompanied by a check in the amount of Three Hundred Fifty Dollars ($350.00), presumably to cover Midcontinent's costs of compliance. Midcontinent believes it must still object to and move to quash the new subpoena, on grounds newly different from its prior objections and motion.

Both subpoenas arise from a *John Doe* action. The docket proceedings in the underlying *John Doe* action show Voltage Pictures alleges that unknown individuals are violating its copyrights in a certain movie. To protect its copyright and recover damages, Voltage Pictures has initiated a *John Doe* action in order to gain the knowledge of the identities of individuals who it believes has violated its copyright. Because the action is in the nature of a *John Doe* action, Voltage Pictures sought and received an order from the District of Columbia Court, allowing it to undertake discovery prior to a Rule 26(f) parties' planning meeting in order to discover the identity of unknown defendants.

The new subpoena, as did the prior one, commands Midcontinent to produce more than 140 of (presumably) their customers' names, current (and permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses. *See* Johnson Aff. at ¶ 4 and Exhibit A. Midcontinent's own privacy policies and statements preclude it from providing its internet customer account information to third parties without prior valid legal process. *See* Johnson Aff. at Exhibits B & C. In keeping with those privacy policies and statements, Midcontinent has advised its internet customers that it will not disclose their personal information in relation to their account, without their consent, unless required to do so by legal

process. *Id.* Further, Midcontinent's privacy policies and statements advise that, if it is required to so disclose internet customer account information, it will notify the customer before making the disclosure unless legally prohibited from giving such notice. *Id.*

With respect to the current subpoena, Midcontinent must object and move to quash the subpoena because Midcontinent requests the Court to grant a reasonable opportunity for Midcontinent to give internet customers prior notice of the disclosure and because Midcontinent has continued a more thorough analysis of the costs and burden it believes will be incurred in such notification and disclosure and requests that the Court order appropriate compensation for such costs and burden upon Midcontinent, as a non-party to the above-captioned action.

### Legal Authorities and Argument

Midcontinent is not a party to the District of Columbia action. However, Midcontinent would respectfully request this Court to take notice of the actions of the District Court in which the underlying action is also venued in other similar proceedings, in which ISPs have been served with subpoenas seeking identifying information of internet customers. In *Achte/Neunte Boll Kino Betwiligungs GMBH & Co KG vs. Does 1-4,577*, Civ. No. 10-453 (D.D.C. September 19, 2010), the District Court for the District of Columbia issued an Order approving a Notice to subscribers regarding an issuance of a subpoena disclosure of identity. (copy attached hereto as #1)

Midcontinent would respectfully request that this Court enter an Order requiring the provision of a similar notice to subscribers before Midcontinent must disclose personal account information, and Midcontinent has prepared a proposed Notice for the Court's consideration. (copy attached hereto as #2) This Notice would not only be consistent with the Court-directed Notice entered in the District Court for the District of Columbia, it would be consistent with

Midcontinent's privacy policies and statements, which were drafted in consideration and in light of restrictions upon disclosure of customer information under federal law. *See e.g.*, The Stored Wire and Electronic Communications and Transactional Records Access Act, as modified by the Patriot Act, codified at 18 U.S.C. §§ 2701, *et seq.*; *see also* 47 U.S.C. § 551(c) (The Cable Communications Policy Act); *Arista Records, LLC v. Does 1-12*, 2008 WL 4133874 (E.D. Cal., Sept. 4, 2008); *UMG Recordings, Inc. v. Does 1-4*, 2006 WL 1343597 (N.D. Cal., April 19, 2006).

In addition to notification concerns, there are also privacy and/or constitutional concerns. *In re Charter Communications, Inc.*, 393 F.3d 771 (8th Cir. 2005). In *Charter*, copyright owners wanted to obtain and serve subpoenas on internet service providers (ISPs), like Midcontinent, to obtain personal account information of the ISPs' subscribers who were alleged to be violating copyrights. *Id.* at 772-73. Because the Court was able to reach its decision under a federal statute, it did not rule upon other constitutional issues, but it did state "some concern. . . . We comment without deciding that this [subpoena provision under another statute allowing for disclosure of customer information] *may* unconstitutionally invade the power of the judiciary by creating a statutory framework pursuant to which Congress, via statute, compels a clerk of court to issue a subpoena, thereby invoking the court's power. Further, we believe Chart has at least a colorable argument that a judicial subpoena is a court order that must be supported by a case or controversy at the time of its issuance." *Id.* at 777-78 (emphasis in original).

Further, there remain jurisdictional questions. The District Court for the District of Columbia (the venue of the underlying action) has not only ordered notice to subscribers before disclosure of information under subpoena, it has also required the party seeking the information to show cause why the Court has personal jurisdiction over the subscribers living outside the

Court's jurisdiction. *See Achte/Neunte Boll Kino Betwiligungs GMBH & Co KG vs. Does 1-4,577*, Civ. No. 10-453 (D.D.C. September 10, 2010) (copy attached as #3).

Additionally, the subpoena places an undue burden upon Midcontinent, when the party attempting to issue the subpoena has offered Three Hundred Fifty Dollars ($350.00) as compensation for Midcontinent's burden of compliance. FED.R.CIV.P. 45(c)(1) requires parties serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." FED.R.CIV.P. 45(c)(2)(B) recognizes that non-parties must be protected from "significant expense resulting from compliance" with a subpoena.

Courts which have addressed the question of discovery from non-parties "have considered a number of factors including how narrowly tailored the request is, cost, availability of the information, importance of the issues at stake, and the benefits to the parties." *Guy Chem. Co., Inc. v. Romaco AG*, 243 F.R.D. 310, 312 (N.D. Ind. 2007) (citations omitted).

> Non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. *United States v. Amerigroup Ill., Inc.,* 2005 WL 3111972 at *4 (N.D.Ill.2005) (citations omitted). It is clear that discovery in the hands of a non-party is subject to discovery under the Federal Rules. *See* FED.R.CIV.P. 26(b)(1); FED.R.CIV.P. 45; *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 25, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). But that does not mean non-parties must yield discovery that causes undue burdens, as evidenced by the protections in the Federal Rules. *See* FED.R.CIV.P. 26(b), (c); FED.R.CIV.P. 45(d). **Non-parties understandably object to paying the litigation costs of other parties.** *See Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998); *Dart Indus. Co. v. Westwood Chem. Co.,* 649 F.2d 646, 649 (9th Cir.1980); *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 49 (S.D.N.Y.1996). **Simply put, it is not [the non-party recipient of the subpoena's] lawsuit and they should not have to pay for the costs associated with someone else's dispute. Not only is it fundamentally unfair for non-parties to bear the significant litigation costs of others, but also if this Court were to allow litigating parties . . . to impose such a burden on non-parties, then the likelihood of cooperation by non-parties in the future would be placed in jeopardy.**

*Id.* at 313 (emphasis added).

5

Thus, in *Guy Chem. Co.*, the party seeking discovery from the non-party was required to pay for the expenses involved with discovery it sought. *Id.*; *see also In re New England Carpenter Health Benefits Fund*, 2006 WL 3050806, at * 2 (C.D. Ill. 2006) ("requiring a non-party to incur what appear to be rather significant costs of complying with the subpoena as it relates to these contracts constitutes an undue burden. Unless [the party seeking discovery] is willing to pay the costs associated with this request, the subpoena is quashed as to these remaining contracts."); *Spears v. City of Indianapolis,* 74 F.3d 153 (7th Cir.1996) ( Rules 45 and 26 give "considerable discretion" in determining whether expense-shifting in discovery production is appropriate in a given case); *Compaq Computer Corp. v. Packard Bell Electronics, Inc.,* 163 F.R.D 329 (D.C. Cal. 1995) (awarding hourly rate for in-house legal staff and for employees sitting for deposition).

When the previously subpoena was faxed to it, Midcontinent initially estimated its cost of production would take only about three and one-half hours and would, accordingly, cost Midcontinent approximately Three Hundred and Fifty Dollars ($350.00) to comply. *See* Johnson Aff. at ¶ 6. In the time that has passed since then, and in light of the developments which have occurred and are occurring in these *John Doe* District of Columbia District Court litigations, specifically regarding the District Court's ordered notice to internet customers of disclosure of their account information, Midcontinent has determined that its costs and expenses will be much greater than a total of Three Hundred Fifty Dollars. *Id.* at ¶ 8 & Exhibit D. Rather, Midcontinent has determined a process for locating the host IP address on the date indicated on the subpoena, for notification regarding the proposed disclosure to the subscriber alleged to have such access, and for the ultimate disclosure of information, and Midcontinent has determined a more accurate cost of compliance with the subpoena. *Id.* With the added costs of notification to

customers, Midcontinent's cost would be Fifty Four Dollars and Forty Cents ($54.40) for each IP address so processed. *Id.* Accordingly, Midcontinent would respectfully request that before it must engage in that process that Plaintiff be required to reimburse Midcontinent for its expenses in producing information in litigation in which it is not a party.

Further, given that this process will take a more significant amount of time than Midcontinent originally believed, Midcontinent would respectfully request the Court to require it to process not more than twenty-five addresses each month. *See* July 2, 2010 Order in *Achte/Neunte Boll Kino Betwiligungs GMBH & Co KG vs. Does 1-4,577*, Civ. No. 10-453 (D.D.C. July 2, 2010) (copy attached hereto as #4, ordering that Time Warner Cable Inc. would not be required to provide identifying information for more than 28 IP addresses per month, that the party seeking the information would have to payment Time Warner's reasonable costs for looking up the identifying information and notifying subscribers, and that the party seeking the information could seek additional information only with the Court's approval). Midcontinent's regular business processes should not be unduly disrupted to provide information to Plaintiff in connection with a subpoena, and limiting the number of addressed Midcontinent must process each month would limit that disruption. *See* Johnson Aff. at ¶ 3.

Midcontinent is not a party to the District of Columbia action, and it should not have to unduly bear the cost and burden of production of information for an action to which it is not a party. Under Rule 45, if the parties to the District of Columbia action desire to obtain such information, they must bear the costs and burden of that production.

### Conclusion

Midcontinent has taken the actions it believes reasonable and appropriate to protect the privacy of its internet customers, as expressed to its customers through privacy notices and

statements. In accordance with its concerns for customer privacy, Midcontinent respectfully asks the Court to sustain its objections to the subpoena and grant its motion to quash the subpoena unless the Court requires the prior notice to customers described above, for the protection of their privacy, requires payment to Midcontinent before imposing the cost and burden of production and limits the number of monthly disclosures required to avoid undue cost and burden being imposed upon a non-party to an action. Finally, Midcontinent would respectfully request the Court to consider the privacy/constitutional, case-or-controversy concerns raised in *Charter Communications*, and the personal jurisdictional problems recognized by the District Court for the District of Columbia, as set forth above.

Dated at Sioux Falls, South Dakota, this 13th day of October, 2010.

DAVENPORT, EVANS, HURWITZ & SMITH, L.L.P.

/s/ Sandra Hanson
Sandra Hoglund Hanson
206 West 14th Street
PO Box 1030
Sioux Falls, SD 57101-1030
Telephone: (605) 336-2880
Facsimile: (605) 335-3639
E-mail: shanson@dehs.com
*Attorneys for Midcontinent Communications*

**CERTIFICATE OF SERVICE**

Sandra Hoglund Hanson, one of the attorneys for Midcontinent Communications, hereby certifies that a true and correct copy of the foregoing "Brief in Support of Motion to Quash and Objections to Subpoena" was served by mail upon:

Nicholas A. Kurtz
Dunlap Grubb Weaver

8

199 Liberty St., SW
Leesburg, Virginia 20175
Telephone: 571-252-3311
E-mail:nkurtz@dglegal.com
*Attorneys for Plaintiff*

on this 13th day of October, 2010.

*Sandra Hanson* (signature)

9